Morgan Ricketts (Bar No. 268892)
**RICKETTS & YANG**
540 El Dorado Street #202
Pasadena CA 91101
Telephone:   (213) 995-3935
Facsimile:    (213) 995-3963
Email:  morgan@rickettsandyang.com

Attorneys for Plaintiff Patricia Beers

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA BEERS, | ) Case No.: |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR** |
| CITY OF LOS ANGELES, a municipal entity; LOS ANGELES CITY ATTORNEY MIKE FEUER, CHIEF CHARLIE BECK, COMMANDER ANDREW SMITH, CAPTAIN JEFF BERT, and DOES 1-20, inclusive, | ) **1. RETALIATION FOR FIRST AMENDMENT ACTIVITY**<br>) **2. RETALIATORY PROSECUTION**<br>) **3. UNREASONABLE SEARCH AND SEIZURE**<br>) **4. MALICIOUS PROSECUTION**<br>) **5. SELECTIVE PROSECUTION**<br>) **6. BRADY VIOLATION** |
| Defendants. | ) |
| | ) **DEMAND FOR JURY TRIAL** |

1

# I. JURISDICTION

1.      This Court has jurisdiction under 28 U.S.C. § 1331.  Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.

# II. VENUE

2.      Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint happened in the Central District.

# III. PARTIES

3.      Plaintiff Patricia Beers ("Plaintiff" or "Beers") is, and at all times relevant to this Complaint was, a resident of the City of Los Angeles.

4.      On information and belief, Defendant City of Los Angeles ("the City") at all times material herein was a public entity duly organized and chartered under the laws of the State of California, and was responsible for the hiring, training, and supervising of the conduct of their employees and agents, including the City Attorney's Office ("CAO") and all of the CAO's employees.  The City is a "person" subject to suit within the meaning of Title 42, U.S.C. § 1983 under *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 691 (1978).

5.      At all times material herein, the City was responsible for the employment, training, and supervision of the actions, conduct, policies, practices, and customs of its employees and agents, including the CAO and all of the CAO's employees. At all times material herein, the City was responsible for assuring that the

COMPLAINT

actions, conduct, policies, procedures, and customs of their employees complied with the laws and Constitutions of the United States and of the State of California.

6. On information and belief, the City is responsible for implementing, maintaining, sanctioning, or condoning a policy, custom or practice, under which the wrongful or illegal acts hereinafter complained of occurred. By reason of this policy, custom or practice, the City is liable for the damages hereinafter complained of.

7. Defendant Chief Charlie Beck, is and was, at all times relevant to this action, the LAPD police chief and a policymaker for his department. He is sued in both his individual and official capacities.

8. Defendant Commander Andrew Smith, was the field commander directing the operations. He is sued in both his individual and official capacities in that he was delegated the policy making authority by Defendant Chief Beck for these incidents.

9. Defendant Captain Jeff Bert was the field commander at the 6th and Hope incident. He is sued in both his individual and official capacities in that he was delegated the policy making authority by Defendant Chief Beck for this incident.

10. Plaintiff is informed and believes, and based thereon alleges, that at all times material herein, Defendant Feuer was the acting City Attorney for the City of Los Angeles, and was responsible for policy-making and high-level decisions relating to what kinds of prosecutions the CAO would undertake and emphasize.

COMPLAINT

11.     Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned below, each Defendant was the principal, agent, representative, partner, or co-conspirator of the remaining Defendants, and each other, and that in doing the acts alleged, each of the Defendants were acting within the course and scope of their agency, employment, partnership, conspiracy, or other authorized relationship with the other Defendants and with the permission and ratification of Defendants.  Whenever and wherever reference is made in this Complaint to any acts of Defendants, such allegations and references shall also be deemed to mean the acts of each Defendant acting individually, jointly or severally.

12.     Plaintiff is informed and believes and based thereon alleges that the Defendants were engaged in a conspiracy to violate Plaintiff's constitutional and other rights, and to chill Plaintiff's exercise of those rights, and were acting as co-conspirators with that aim in mind.  In committing the acts herein alleged, the individual Defendants acted knowingly, maliciously, and with reckless or callous disregard for Plaintiff's constitutional and other rights, which justifies an award of punitive damages against each individual Defendant.

## V. STATEMENT OF FACTS

**A.  Background: Patricia Beers**

13.     Plaintiff Patricia Beers has attended numerous large-scale protests in the Los Angeles area.  She is active on Twitter under the name "PMbeers", where she has nearly 10,000 followers, and on UStream as PMBeers, where her livestream videos of

COMPLAINT

protests and other activist-related events have captured over 330,000 total views. She also posts under the name LAPeoplesMedia, an account which also boasts nearly 10,000 followers.

**B. Background: November 2014 Ferguson Protests**

14.     In late November 2014, news broke that a grand jury had failed to indict Darren Wilson, a white police officer in Ferguson, Missouri, after he shot and killed a young black man named Michael Brown. Nationwide protests followed in numerous cities, including Los Angeles.

15.     On Wednesday, November 26, 2014, a crowd of peaceful protesters, including Plaintiff, began to gather in front of the federal courthouse on Temple and Spring Street starting at 3:00 pm in protest over the grand jury's failure to indict Wilson for the killing of Michael Brown.

16.     At the conclusion of the rally at the Federal Courthouse, the protesters peacefully marched to the LAPD Headquarters on 1st Street. LAPD officers monitored and traveled alongside the march.

17.     From LAPD Headquarters, Plaintiff and the other demonstrators marched through part of downtown Los Angeles. At approximately 7:00 p.m., the demonstrators marched south on Flower street and attempted to turn west on 7th Street. LAPD officers formed a line on 7th Street to the west of the demonstrators and in front of Figueroa Street and prevented the demonstrators from continuing west on 7th Street.

COMPLAINT

18.     Soon thereafter, LAPD officers formed a line at Flower and 7th, preventing the demonstrators from heading east on 7th and cutting off all access to Flower Street. These two lines blocked all access to both Flower and Figueroa Streets, kettling the protesters on the single block of 7th Street.

19.     Once LAPD established the line at 7th and Flower and kettled the protesters, the LAPD officers at 7th and Figueroa moved their line to the east, pushing the demonstrators east and concentrating them on the eastern portion of the block of 7th Street between Figueroa and Flower.

20.     According to subsequent media reports, LAPD Captain Jeff Bert issued a dispersal order around this time. See, e.g., "L.A. files few charges in Ferguson police shooting protests despite mass arrests"" LOS ANGELES TIMES, July 29, 2015: http://www.latimes.com/local/crime/la-me-lapd-mass-arrests-20150716-story.html. However, as reported by the Los Angeles Times, Captain Bert concedes that the dispersal order was inadequate.

21.     After approximately ten to fifteen minutes of kettling the demonstrators on 7th Street, LAPD officers then opened the police line on Flower and 7th Streets to allow the demonstrators to proceed north on Flower. The LAPD continued to block Flower to the South and 7th to the east and west. With northbound on Flower as the only option, Plaintiff and the other demonstrators proceeded in that direction.

22.     When the demonstrators attempted to head west on Wilshire Boulevard, the LAPD blocked the intersection of Wilshire and Figueroa. The demonstrators

COMPLAINT

continued north on Lebanon Street, an alley-like street that runs north-south from 7th to 6th Streets between Figueroa and Flower Streets. When Lebanon Street came to a dead end at 6th Street, the demonstrators turned west on 6th Street.

23. LAPD formed another line at the intersection of 6th and Figueroa Streets, blocking Figueroa Street on the south side of the intersection and 6th Street on the west side of the intersection. LAPD officers in full "tactical" or "riot" gear were seen running north up Figueroa toward the police line and demonstrators. Having come from the east and without access to the south or west, the demonstrators turned north up Figueroa.

24. One block up, at 5th and Figueroa, the LAPD formed lines at the intersection blocking 5th Street to the west and Figueroa to the north. LAPD officers, including the officers in full "tactical" or "riot" gear, continued up Figueroa from the south. The only direction open to the protesters was east on 5th Street. The demonstrators went east.

25. At 5th and Flower Streets, LAPD officers instructed demonstrators to continue east on 5th Street. But when the demonstrators began to head east on 5th Street, a separate group of LAPD officers in full "tactical" or "riot" gear was jogging toward them from the east on 5th Street.

26. Without other options, the demonstrators proceeded through the walkways of the Central Library, the only avenue of dispersal open to them by the LAPD, who knew that this route would lead to the marchers being kettled in the cul-

COMPLAINT

de-sac at 6th and Hope. LAPD officers closed in around the bushes on the north and west sides of the Library. The demonstrators proceeded through the walkways around the Central Library to the south side of the building where Hope Street dead-ends at Library building, just north of 6th Street.

27.    LAPD officers then kettled the demonstrators on Hope Street between 6th Street and the Central Library. Throughout all of this time, since the failed attempt to give a dispersal order some distance away, no further attempt was made to give a dispersal order of any type.  Some of the demonstrators requested but were denied permission to leave. Approximately fifteen minutes after they were trapped on Hope Street, without any instruction or information, the LAPD announced that all of the demonstrators were under arrest.

28.    Officers arrested approximately 130 individuals, including Plaintiff, at 6th Street and Hope that evening. Each was arrested on charges of misdemeanor Failure to Disperse pursuant to Penal Code § 409.

29.    Officers separated the demonstrators, including Plaintiff, into small groups and each group was processed on-site by two LAPD officers. The officers photographed Plaintiff, collected and recorded her name, searched her, handcuffed her with zip-ties, and loaded her onto a bus.

30.    Along with other demonstrators, Plaintiff was then transported to jail.

COMPLAINT

31.     Plaintiff was incarcerated for several hours, despite the fact that she was entitled to release on her own recognizance ("OR") immediately upon completion of booking pursuant to California Penal Code § 853.6.

32.     LAPD Lieutenant Andy Neiman was quoted in the media as saying all demonstrators who were unable to post bail would be held until they were able to appear in court early the following week. Commander Andy Smith was reported to have told news media that, while LAPD would typically release individuals with similar charges on OR, "In this case, because these people are part of a protest that is continuing, they will not be released on their own recognizance." After holding Plaintiff for an extended period of time, she was finally released OR only because Chief Beck decided to let the demonstrators go at that time.

33.     Penal Code § 853.6 imposes a mandatory requirement to release misdemeanor violators on their own recognizance either before or immediately after booking unless individualized probable cause exists to believe that one or more exceptions to the statute exists as a basis to deny OR release. By statute, keeping individuals in custody beyond booking requires law enforcement to prepare a specific form and note the applicable exception to mandatory release. There was no reasonable basis to believe that Plaintiff came within any of these enumerated exceptions, but no individual assessment was made and no forms were completed at the time of Plaintiff's booking noting the reason for not releasing her immediately. Plaintiff was denied the individualized assessment of criminal liability that is the

COMPLAINT

hallmark of due process and had her liberty unlawfully restricted as a result of a deliberate decision by Defendant City to ignore the explicit command of Penal Code § 853.6.

34.     This action was in keeping with the City's unlawful policy of denying OR release to individuals arrested for engaging in civil disobedience. According to LAPD Deputy Chief Perez, who first announced this policy during the Occupy protests in Los Angeles in 2011, the decision was made to deny OR release to those engaged in First Amendment activity to "teach people a lesson."

35.     Such a basis for a blanket decision to deny Plaintiff's liberty and detain her without justification for a prolonged time violates Plaintiff's First, Fourth, and Fourteenth Amendment rights, and was done with the specific and deliberate intent to interfere with the exercise of Plaintiff's rights to assembly and due process.

**C.     Subsequent Targeting of Journalists and "Leaders" by Defendants**

36.     Plaintiff routinely attended and livestreamed the Ferguson protests in Los Angeles, often daily, for a period of weeks or months.  Some protests drew thousands; others merely dozens.  Plaintiff attended nearly all of them, livestreaming for the benefit of those who could not participate but wanted to be involved.  Plaintiff has written and disseminated numerous pieces online that openly criticize the Los Angeles Police Department and police in general.

37.     On information and belief, Jasmyne Cannick is a social commentator who has been published in the Los Angeles Times on civil rights issues, and has

COMPLAINT

received numerous honors such as Most Influential African American In Los Angeles Under 40 by Wave Newspaper; 25 Women Shaping The World by Essence Magazine; Southern California's Seven Women of Vision by KCET; 40 People Under 40 by The Advocate Magazine; and 2015 LA's Most Fascinating People by LA Weekly.  She worked on the political campaigns of Bernard Parks, Curren Price, and Herb Wesson Jr., among others, and was an on-air contributor to NPR.  She is a current on-air contributor at KJLH-FM, a media consultant to the Crenshaw Legal Clinic, and a public affairs consultant for the City of Inglewood.  Ms. Cannick has published her writing online, and has been openly critical of the Los Angeles Police Department in her writing.

38.     On information and belief, Linda Daitsman is an activist with the Revolutionary Communist Party ("RCP"), a well-known presence at many protests around the country.  Daitsman routinely attended protests in the Los Angeles area, was outspoken in her challenges of police and the criminal justice system, and occasionally used bullhorns at protests which she brought with her.  When Daitsman attended protests, she routinely wore shirts with logos and slogans of the RCP, and otherwise identified herself as a member of the RCP, which on information and belief is known to LAPD leadership as an organization highly critical of the police.

39.     The CAO filed charges against only three of the more than one hundred and thirty individuals who were arrested in that location: Daitsman, Cannick, and Plaintiff.

COMPLAINT

40.     Daitsman and Plaintiff were charged with violating California Penal Code § 647(c), which prohibits maliciously blocking traffic.  Cannick was charged with violating California Penal Code § 148, which prohibits resisting, delaying, or obstructing police officers.

41.     On information and belief, the CAO dismissed both Daitsman's and Cannick's charges after months of prosecuting them.

42.     Plaintiff was tried and acquitted on December 15, 2015, constituting a favorable termination on the merits under the law.

43.     On information and belief, none of the three cases arising out of the November 26, 2014 Ferguson protests were filed as genuine efforts by the CAO to punish and deter criminal activity, but were instead unconstitutional and malicious attempts by the CAO to punish and deter First Amendment activity.

44.     On information and belief, the CAO is unduly influenced by political pressure from the Los Angeles Police Department.  Although a City Attorney may determine that a given charge against a defendant is unwarranted, the CAO routinely refuses to dismiss if the arresting officer does not agree.  On information and belief, the Los Angeles Police Department improperly influenced and pressured the CAO to target Daitsman, Cannick, and Plaintiff, and the CAO did so, thereby failing in its duty to exercise independent prosecutorial judgment in determining whether to file charges at all, which charges to file, and against which defendants.

COMPLAINT

45.    As part of an ongoing plan and pattern of suppressing dissent and undermining the momentum of protests, the Los Angeles Police Department and the CAO intentionally cooperated to select and target Plaintiff and others that appeared to be "leaders" of the protest movement, whether in real life or online, and intentionally and maliciously filed criminal charges against them without probable cause in order to deter them from future First Amendment activity.

46.    On information and belief, the purpose of the LAPD and CAO's campaign against visible "leaders" of protest movements is to suppress free speech, punish Plaintiff and the others discussed herein for their First Amendment protest and filming activities, and deter other reasonable people from taking prominent roles in protest movements, whether online or in the streets.

**D. Monell Claim**

47.    The City maintains a policy, practice, and/or custom of unlawfully retaliating against those who criticize the City, particularly the police, including by targeting them for increased monitoring, by arresting them without probable cause, by filing unjustified criminal charges, and by punishing them more harshly than others.

48.    Even as of June 11, 2016, the Los Angeles Police Department was still monitoring Cannick and Plaintiff's online activity for no legally justifiable reason.  On that date, Gisselle Espinoza, who on information and belief works for the LAPD, emailed eleven other LAPD employees with an "update" in which someone reported that as of 11:30 a.m. that day, Cannick had tweeted about an officer-involved shooting

COMPLAINT

in South Los Angeles. The update further indicated that the post had garnered eight "retweets" and two "likes," and singled out Plaintiff as having retweeted Cannick's tweet under two separate Twitter usernames. On information and belief, the City has a policy and custom of monitoring and targeting those who outspokenly criticize police or the government, and who seek to exercise their First Amendment rights of assembly and petitioning the government for redress of grievances.

49. The City also maintains a policy, practice, and/or custom of unlawfully permitting the Los Angeles Police Department to influence its charging decisions, rather than exercising independent prosecutorial discretion to reduce or dismiss charges, or to offer more lenient plea bargains to defendants under appropriate circumstances.

50. The violation of constitutional and/or statutory rights herein complained of resulted from a policy, practice, and/or custom of the City and was directed, approved and/or ratified by City officials who are policymakers for the City.

**E. Damages Sustained As Result of Defendants' Conduct**

51. Plaintiff was forced to prepare for and attend a trial on charges that were frivolous and malicious, and brought for political purposes rather than legitimate exercises of government authority to punish and deter criminal behavior.

52. Plaintiff experienced significant emotional distress and anxiety at the possibility of being convicted of a crime she did not commit, and also experienced fear and anxiety at being targeted by the Los Angeles Police Department. She was

COMPLAINT

distressed that she was being singled out on account of her exercise of her

constitutional rights.

## V. CLAIMS

### FIRST CLAIM FOR RELIEF

**(Retaliatory Arrest in Violation of First Amendment)**

**(Against Defendants City of Los Angeles, Chief Beck, Commander Smith,**

**Captain Bert, and Does 1-20)**

53.     Plaintiff realleges and incorporates by reference herein each and every

allegation set forth in paragraphs 1 through 52.

54.     By their conduct, including by arresting, searching, and holding Plaintiff

without the benefit of OR release, and other conduct described above, Defendants

retaliated against Plaintiff based on her exercise of rights protected by the First

Amendment to the United States Constitution, which deprived her of those rights.  At

all relevant times, Defendants acted under color of law.  At all relevant times,

Defendants, and each of them, conspired with each other, Doe Defendants 1-100 and

the City to harm Plaintiff, to punish her for exercising her rights, and to intimidate her

into ceasing her speech and political activity.

55.     Defendants' conduct deprived Plaintiff of her rights, causing her

damages in an amount to be proven at trial.  Plaintiff also experienced significant

emotional distress as a result of Defendants' actions, including fear of physical injury

by members of the Los Angeles Police Department when she attended subsequent

protests; fear of being unlawfully arrested again in violation of her rights; and fear of being targeted and accused of additional crimes she had not committed.  Plaintiff is entitled to compensation for the emotional distress she experienced as a result of Defendants' conduct.

56.     Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

57.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her rights.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against defendants sued in their individual capacities, as provided by law.

58.     Plaintiff is entitled to injunctive relief preventing all Defendants from similar unlawful conduct in the future.

59.     Defendant City of Los Angeles is liable for monetary and injunctive relief for this constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) because the action implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the city's officials or policymakers.

## SECOND CLAIM FOR RELIEF

### (Retaliatory Prosecution in Violation of First Amendment)

### (Against All Defendants)

16

60.     Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 59.

61.     By prosecuting only those individuals perceived to have the ability to lead demonstrators or to effectively publicize the movement – Plaintiff being one of those three individuals – Defendants retaliated against Plaintiff based on her exercise of rights protected by the First Amendment to the United States Constitution, which deprived her of those rights.  As to the Defendants that were not directly responsible for filing or pursuing malicious charges against Plaintiff, they were otherwise integrally involved in providing false statements to prosecutors, and maliciously or recklessly made false reports to prosecutors that proximately caused Plaintiff's prosecution, or caused the prosecutor to act contrary to his or her independent judgment.  At all relevant times, Defendants acted under color of law.  At all relevant times, Defendants, and each of them, conspired with each other, Doe Defendants 1-20 and the City to harm Plaintiff, to punish her for exercising her rights, and to intimidate her into ceasing her speech and political activity.

62.     Defendants' conduct deprived Plaintiff of her rights, causing her damages in an amount to be proven at trial.  Plaintiff also experienced significant emotional distress as a result of Defendants' actions, including fear of being unlawfully targeted and accused of additional crimes she had not committed; and stress and anxiety over having to defend herself against a malicious charge and the possibility of being sentenced to jail for a crime she had not committed.  Plaintiff is

17

COMPLAINT

entitled to compensation for the emotional distress she experienced as a result of Defendants' conduct.

63.   Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

64.   Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her rights.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against individual defendants, as provided by law.

65.   Plaintiff is entitled to injunctive relief preventing all Defendants from similar unlawful conduct in the future.

66.   Defendant City of Los Angeles is liable for monetary and injunctive relief for this constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) because the action implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the city's officials or policymakers.

## THIRD CLAIM FOR RELIEF

### (Unreasonable Seizure in Violation of Fourth Amendment)

### (Against Defendants City of Los Angeles, Chief Beck, Commander Smith, Captain Bert, Does 1-20)

67.   Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 66.

COMPLAINT

68.     On April 14, 2015, Defendants unreasonably seized Plaintiff, unreasonably searched her, and falsely detained and arrested her without probable cause and without legal authority when Defendants could not reasonably have believed that she had committed or was about to commit a crime or public offense, in violation of her Fourth Amendment rights, causing her damages in an amount to be proven at trial.  At all times in doing the acts complained of herein, Defendants acted under color of law.

69.     Plaintiff also experienced significant emotional distress as a result of Defendants' actions, including distress at being searched, handcuffed, and kept in jail without justification; and other forms of emotional distress.  Plaintiff is entitled to compensation for the emotional distress she experienced as a result of Defendants' conduct.

70.     Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

71.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her rights.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against Defendants, as provided by law.

72.     Plaintiff is entitled to injunctive relief preventing all Defendants from similar unlawful conduct in the future.

COMPLAINT

73.     Defendant City of Los Angeles is liable for monetary and injunctive relief for this constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) because the action implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the city's officials or policymakers.

## FOURTH CLAIM FOR RELIEF

### (Malicious Prosecution in Violation of Fourth Amendment)

### (Against All Defendants)

74.     Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 73.

75.     Defendants maliciously filed a criminal charge of intentionally blocking traffic against Plaintiff, or, as to the Defendants that were not directly responsible for filing malicious charges, they were otherwise integrally involved in providing false statements to prosecutors, and maliciously or recklessly made false reports to prosecutors that proximately caused Plaintiff's prosecution, or caused the prosecutor to act contrary to his or her independent judgment.

76.     On December 18, 2015, a jury acquitted Plaintiff of the charge, constituting a legal termination of the proceeding favorable to Plaintiff.

77.     Defendants did not have a suspicion founded on circumstances sufficiently strong to warrant a reasonable person to believe the charges were true; in other words, Defendants did not have probable cause to institute these criminal

COMPLAINT

charges against Plaintiff.  Defendants did so regardless, with malice, with the purpose of denying Plaintiff equal protection and her right to free speech, free assembly, right of petition, and right to be free from unreasonable seizures, because of Plaintiff's involvement in the Ferguson protest movement and online leadership in documenting protests and discontent.  At all times in doing the acts complained of herein, Defendants acted under color of law.

78.     Defendants unreasonably seized Plaintiff by maliciously prosecuting her in violation of her Fourth Amendment rights, causing her damages in an amount to be proven at trial.

79.     Plaintiff also experienced significant emotional distress as a result of Defendants' actions, including fear of going to jail or being fined; distress at being prosecuted for exercising her constitutional rights; worry for the welfare of her son if she were to be jailed as a result of the prosecution; and other forms of emotional distress.  Plaintiff is entitled to compensation for the emotional distress she experienced as a result of Defendants' conduct.

80.     Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

81.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her rights.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against Defendants, as provided by law.

COMPLAINT

82.     Plaintiff is entitled to injunctive relief preventing all Defendants from similar unlawful conduct in the future.

83.     Defendant City of Los Angeles is liable for monetary and injunctive relief for this constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) because the action implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the city's officials or policymakers.

**FIFTH CLAIM FOR RELIEF**

**(Violation of Fourteenth Amendment – Selective Prosecution/Deprivation of Equal Protection)**

**(Against All Defendants)**

84.     Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 83.

85.     Defendants unlawfully deprived Plaintiff of her right to equal protection by selectively prosecuting her and other perceived "leaders" of the protest movement solely in order to target, intimidate, and retaliate against them, and to deter them from future First Amendment activities, rather than prosecuting individuals based on actual violations of the criminal laws or other legitimate factors in the exercise of prosecutorial discretion.  Defendants at all relevant times acted under color of law.

22

COMPLAINT

86.     At all relevant times, Defendants conspired with each other to harm Plaintiff and violate her Fourteenth Amendment right to equal protection.

87.     Defendants' conduct in fact deprived Plaintiff of her rights, also causing her damages in an amount to be proven at trial.

88.     Plaintiff also experienced significant emotional distress as a result of Defendants' actions, including fear of going to jail or being fined; distress at being prosecuted for exercising her constitutional rights; worry for the welfare of her son if she were to be jailed as a result of the prosecution; and other forms of emotional distress.  Plaintiff is entitled to compensation for the emotional distress she experienced as a result of Defendants' conduct.

89.     Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

90.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her rights.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against Defendants, as provided by law.

91.     Plaintiff is entitled to injunctive relief preventing all Defendants from similar unlawful conduct in the future.

92.     Defendant City of Los Angeles is liable for monetary and injunctive relief for this constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) because the action implemented or executed a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by the city's officials or policymakers.

## SIXTH CLAIM FOR RELIEF

### (Violation of Fourteenth Amendment – Deprivation of Due Process)

### (Against Doe Defendants 1-20)

93.     Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 92.

94.     Defendants unlawfully deprived Plaintiff of her right to due process by failing either to disclose exculpatory evidence to Plaintiff's defense counsel, or by failing to present exculpatory evidence to prosecutors with discretion to charge and prosecute Plaintiff, as required by *Brady v. Maryland*, 373 U.S. 83 (1963).

95.     At all relevant times, Defendants conspired with each other to harm Plaintiff and violate her Fourteenth Amendment right to due process.

96.     Defendants' conduct in fact deprived Plaintiff of her rights, also causing her damages in an amount to be proven at trial.

97.     Plaintiff also experienced significant emotional distress as a result of Defendants' actions, including fear of going to jail or being fined; distress at being prosecuted for exercising her constitutional rights; worry for the welfare of her son if she were to be jailed as a result of the prosecution; and other forms of emotional distress.  Plaintiff is entitled to compensation for the emotional distress she experienced as a result of Defendants' conduct.

98.     Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

99.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her rights.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against Defendants, as provided by law.

100.    Plaintiff is entitled to injunctive relief preventing all Defendants from similar unlawful conduct in the future.

101.    Defendant City of Los Angeles is liable for monetary and injunctive relief for this constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) because the action implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the city's officials or policymakers.

## VI. PRAYER FOR RELIEF

Plaintiff requests that this Court enter judgment in favor of Plaintiff and against each Defendant identified for each count, and for the following specific relief:

1.  Award actual damages and all other damages that may be allowed under federal law to Plaintiff;

2.  Award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C. 1988;

3.  Award Plaintiff costs of suit;

COMPLAINT

4.   Award Plaintiff pre- and post-judgment interest as permitted by law;

5.   Award Plaintiff injunctive relief;

6.   Award such other and further relief as the Court may deem just and appropriate.

DATED: November 25, 2016

By:   /s Morgan Ricketts
        Morgan Ricketts
        Attorneys for Plaintiff Patricia Beers

COMPLAINT

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.


DATED: November 25, 2016

                              By:     /s Morgan Ricketts
                                      Morgan Ricketts
                                      Attorneys for Plaintiff Patricia Beers